IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STATEWIDE BONDING, INC.** | ) |
| 4085 Chain Bridge Road, Suite 100 | ) |
| Fairfax, VA, 22030; | ) |
| | ) |
| **FINANCIAL CASUALTY & SURETY,** | **)** |
| **INC.** | ) |
| 3131 Eastside St suite 600 | ) |
| Houston, TX 77098; | ) |
| | ) |
| **NEXUS SERVICES, INC.** | ) |
| 113 Mill Place Parkway | ) |
| Verona, VA 24482; | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| **U.S. DEPARTMENT OF** | ) |
| **HOMELAND SECURITY ("DHS")** | ) |
| 245 Murray Lane, SW | ) |
| Washington, D.C. 20528; | ) |
| | ) |
| **KEVIN MCALEENAN**, in his | ) |
| individual and official capacity as Acting | ) |
| Secretary of U.S. Department of | ) |
| Homeland Security ("DHS")) | ) |
| 245 Murray Lane, SW | ) |
| Washington, D.C. 20528; | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

## COMPLAINT

Plaintiffs bring this action based on Defendants' violation of relevant

provisions of the Administrative Procedure Act (APA) and Defendants' violation

of Plaintiffs' procedural and substantive due process rights protected by the Fifth

Amendment of the U.S. Constitution.

## INTRODUCTION

This case is distinct from the related case of <u>Statewide v. DHS et al.</u>, 1:19-cv-02083-JEB, because this case deals with two distinct issues:

1. **Bond breach appeals that were mailed <u>before</u> the applicable appeal deadline.** With these appeals, just as described in Statewide v. DHS et al., 1:19-cv-02083-JEB, Defendants continue to unlawfully reject Plaintiffs' timely filed bond breach appeals. These appeals, at least 13 on number, were mailed before the deadline prescribed by DHS regulations, and Defendants wrongfully rejected those appeals as untimely, subjecting Defendants to reputational damage and bond breach invoices totaling over $141,600.00; and

2. **Bond breach appeals that were mailed <u>after</u> the applicable appeal deadline.** These appeals, numbering at least 8, were mailed after the applicable deadline. Defendants rejected those appeals as untimely, but indisputable evidence demonstrates that Defendants accepted a separate (nearly identical) appeal that was also mailed after the applicable deadline and also made under the same facts and legal arguments—and *Defendants resolved that appeal on the merits and in Plaintiffs' favor.* These 8 subject rejected appeals resulted in over $78,000.00 in payment demands as a result of Defendants' arbitrary application of their own regulations.

In both scenarios, Defendants continue to play fast and loose with their own regulations in an effort to financially damage Plaintiffs and disrupt their business of assisting immigrants—truly anything goes in this Administration.

### a. Bond breach appeals that were mailed before the applicable deadline

In a continuation of Defendants' actions as described in related cases, Defendants require that bond breach appeals be submitted by mail. Unlike the federal court system, there is no mechanism for an electronic filing of an appeal and there is no mechanism for a lawyer to hand-file an appeal as may still occur in some courts. Defendants are now refusing to accept Plaintiffs timely submitted appeals—appeals that Plaintiff has mailed by Defendants' prescribed due date— because the United State Postal Service caused those same appeals to arrive past Defendants prescribed due date. The effect on Plaintiffs is an imposition by DHS to pay invoices for bond breaches that should be stayed pending Plaintiffs' filed appeals, an amount totaling nearly $230,000.00.

As this Court well knows, relying on a postmark date to demonstrate timely submission of documents is common practice. Though Defendants are attempting to deny it, this common practice unambiguously forms a part of the DHS regulation in question, 8 C.F.R. § 103.8(b). (See 8 C.F.R. § 103.8(b), signifying that the mailbox rule applies to Plaintiffs' appeals by stating "service by mail is complete upon mailing.")

Defendants have engaged in a switch-up game regarding what some refer

to as the 'mailbox rule,' wielding it as both shield and sword, to ensure an inequitable outcome that prejudices Plaintiffs. For example, Defendants' Form I-290B Instructions for Notice of Appeal or Motion states: "If we sent you the decision by mail, the "date of service" is the date we mailed the decision, not the date you received it." In making that statement, Defendants cite directly to 8 C.F.R. § 103.8(b), which reads: "Effect of service by mail: whenever a person has the right or is required to do some act within a prescribed period after the service of a notice and the notice is served by mail, 3 days shall be added to the prescribed period. **Service by mail is complete upon mailing."**

Several points need to be made at this juncture:

1. Breach notices were served on Plaintiffs by mail, so under 8 C.F.R. § 103.8(b), Plaintiffs have 3 additional days to submit their appeals to Defendants;

2.  In addition to having 3 additional days to submit their appeals under 8 C.F.R. § 103.8(b), Plaintiffs' service of their appeal upon Defendants is complete upon mailing because the plain language of 8 C.F.R. § 103.8(b) expressly states "service by mail is complete upon mailing";

3. Nowhere in 8 C.F.R. § 103.8(b), or anywhere else in 8 C.F.R. § 103.8, does the statute say that the language "service by mail is complete upon mailing" applies only to Defendants;

4. Defendants do not deny that the 3 day extension of time under 8 C.F.R.

§ 103.8(b) applies to Plaintiffs (See Exhibit 4, where Defendants cite to 8

C.F.R. § 103.8(b) to communicate this additional time to Plaintiffs); thus,

Defendants cannot deny that 8 C.F.R. § 103.8(b)'s mandate that "service

by mail is complete upon mailing" also applies to Plaintiffs.

Moreover, the governing statutes contain no express language to support

Defendants' position that an appeal is submitted only when received by

Defendants: "The affected party must **submit** the complete appeal including any

supporting brief as indicated in the applicable form instructions within

30 days after service of the decision"—with emphasis on the word submit. 8

C.F.R. § 103.3(a)(2)(i). Indeed, Plaintiffs submitted the appeals at issue—by mail

within the prescribed due date. (See Exhibit 3, showing the dates appeals were

delivered to the USPS.) The regulatory framework contemplates **submitting**

appeals so that *Defendants* can formally file them with the appropriate agency.

13 of Plaintiffs' 21 subject appeals were mailed by the 33rd day after the

notice of breach date and therefore were timely submitted. Defendants know

this, but continue to blatantly violate their own regulations, demonstrative of

their foundational problem: DHS believes that because these are DHS

regulations, DHS can do as it pleases and make alterations where desired. This

misguided and arrogant belief is not how the law works.

### b.  Bond breach appeals that were mailed after the applicable deadline

Defendants' actions further bear the stench of arbitrary and capricious abuse because separately, as distinguished above, 8 of the 21 subject appeals were not mailed before the 33rd day after the notice of breach date, but Defendants absolutely had the discretion to consider these appeals. This is blatantly evidenced by the fact that Defendants have also ***not rejected*** a bond breach appeal ***using the same legal and factual argument*** that was in fact submitted by Plaintiffs *after* the 33-day deadline, and said appeal was still considered and favorably resolved in Plaintiffs' favor through a bond breach reconsideration. That is, ***during the same time frame at issue in this case and under the same <u>Pereira</u>-based legal arguments***, DHS actually considered a late-filed appeal by Plaintiffs and still granted Plaintiffs' sought relief and ***reinstated the bond***. Therefore, Defendants' rejection of 8 of Plaintiffs' subject appeals that were in fact mailed after the 33-day deadline are rendered arbitrary and capricious and should not have been rejected.

### c.  Defendants' actions continue to harm Plaintiffs

In sum, applying basic rules of statutory construction to the plain language of the regulations in question here demonstrate that the mailbox rule applies to the appeals in question. In addition, Defendants have demonstrated that they arbitrarily apply their own regulations to appeals that were in fact mailed after the deadline, and that they have the discretion to grant appeals that were in fact

mailed after the deadline. Further, the consequences of Defendants' violation of

Plaintiffs' due process rights are completely disproportionate, causing severe and

irreparable harm by, essentially, prohibiting Plaintiffs' program participants

from exercising their last lawful chance at fighting an order of deportation.

Freedom is at stake. As such, Plaintiffs request relief from Defendants' labeling

subject bond breach appeals as untimely filed.


## JURISDICTION AND VENUE

1.

This case arises under the Fifth Amendment to the United States

Constitution; the Administrative Procedures Act, and the Declaratory Judgement

Act. The court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331,

2202, 2201, and 5 U.S.C.A. § 702.

2.

Personal Jurisdiction is proper because Defendants transact business in

this District and thus are subject to personal jurisdiction in this Court pursuant

to, inter alia, Fed. R. Civ. P. 4.

3.

Venue is proper under 28 U.S.C. § 1391 because (1) a substantial part of the

events and omissions giving rise to Plaintiff's claims occurred within this

District and Division and (2) Defendants reside and transact business in this

District and Division.

## STANDING AND EXHAUSTION

### 4.

Standing for these Plaintiffs follows the same reasoning found in the related case: <u>Statewide Bonding Inc., et al v. U.S. Dept. of Homeland Security, et al.,</u> No. 1:18-cv-02115-JEB (D.D.C. 2018). Defendants conduct continues to cause pecuniary and reputational harm to Plaintiffs because of the same reasons as explain in said related case. (<u>See</u> Exhibit 6 for the Second Amended Complaint in that case.) Additionally, and notably, regarding exhaustion of administrative remedies prior to filing in federal court, this Court has noted that exhaustion is not generally required for constitutional claims such as the claims in this case. Second, while it has been established that "'[i]f there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants[]'", this is not the case here. Defendants will not stop engaging in conduct that continues to cause economic and reputational harm to Plaintiffs, even if Plaintiffs appeal Defendants' decision that Plaintiffs' appeals were untimely. Further, Plaintiff's rights do not stem from the failure of the government Defendant to perform under a contract; instead, the rights at issue here stem from Defendants' own regulatory framework. And the substantive due process right at issue, in this case, gains substantial force from Defendants intentional violation of federal law.

**PARTIES**

5.

Plaintiff Statewide Bonding, Inc. is a bonding company that issues criminal and immigration bonds throughout the United States.

6.

Plaintiff Financial Casualty and Surety, Inc. ("FCS") is an insurance company focused on writing bail surety.

7.

Plaintiff Nexus Services, Inc. is a small, for-profit business that provides critical services to immigrants who languish in detention facilities, because they cannot afford to post immigration bonds. Nexus provides guarantees for immigration bonds that are posted by Plaintiffs FCS and Statewide. Nexus' mission is to give hope and help to those without a voice in the immigration system. The Nexus program allows detained immigrants to post their bonds and be reunited with their families without having to pay the full amount of their bonds and allows immigrant detainees to secure release without requiring traditional collateral, indemnifying sureties and/or bail agents for these bonds.

8.

Defendant U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States.

9.

Defendant Kevin Mcaleenan is sued in his individual and official

capacity as Acting Secretary of U.S. Department of Homeland Security

("DHS").

## STATEMENT OF FACTS

**I.     Defendants are ignoring the fact that the mailbox rule is an explicit part of the DHS regulation applicable to this case, 8 C.F.R. § 103.8(b)**

10.

Defendants sent notices of bond breach determinations to Plaintiffs

through regular mail. Plaintiffs were required to respond to the notices of the

bond breaches by mail, as Defendants provided no other mechanism for

receiving an appeal. Defendants do not have an electronic filing system, nor do

they have a physical address to which service may be made by hand filing an

appeal.

11.

Through no fault of Plaintiffs, 13 responsive bond breach appeals sent to the

U.S. Citizenship and Immigration Services' (USCIS') Administrative Appeals

Office (AAO) in the months of April and May 2019 were held by the United States

Postal Service (USPS) for a period of time where, upon their delivery to the AAO,

the timely filing period had extinguished. Each of these 13 bond breach appeals

were mailed by the 33rd day after their respective breach notice date, each were

sent by trackable US Mail, and each received a tracking number that decisively proves the date that they were in fact mailed.

12.

Defendants are deeming Plaintiffs' 13 timely filed bond breach appeals, delayed by the USPS, as untimely filed in order to collect on invoices, and have done so for **hundreds of appeals** that Plaintiffs have mailed prior to Defendants' prescribed deadline for said appeals.

13.

In this case, at least 13 appeals that were submitted on time by Plaintiffs—mailed prior to Defendants' prescribed deadline for said appeals— were rejected by Defendants as being untimely filed—a finding in direct contradiction of DHS regulations. This converted the breach notices that were appealed to being *final agency action* by DHS. DHS is now demanding payment for these 13 bond breaches, despite being timely filed, totaling over $141,600.00

14.

In letters between Plaintiffs and Defendants dated July 1, 2019 and July 8, 2019 regarding bond appeals in a related case, Defendants emphasized that "ICE calculates the timeliness of bond breach appeals by following DHS regulations and USCIS instructions."

15.

In fact, in their July 1, 2019 letter, when addressing Plaintiffs' contention that the mailbox rule applies, Defendants state: "[t]he Form 1-290B Instructions state that the date of service of the decision is the date it was mailed, not the date it was received. The date the 1-290B is submitted to the AAO is the date the USCIS receives it, not the date your office mailed it"; this quoted language **fails to cite all of the relevant language in the I-290B Form, which actually cites to the specific regulation relied on to support Defendants' statement.**

16.

The part of the I-290B Form Instructions for Notice of Appeal or Motion Defendants are relying upon states the following: "If we sent you the decision by mail, the "date of service" is the date we mailed the decision, not the date you received it. **See 8 C.F.R. § 103.8(b)."** This sentence, relied upon by Defendants, clearly obtains its force from the regulation 8 C.F.R. § 103.8(b).

17.

DHS regulation 8 C.F.R. § 103.8 states, in full, the following: "Effect of service by mail. Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period. **Service by mail is complete upon mailing**." 8 C.F.R. § 103.8.

18.

With respect to 8 C.F.R. § 103.8(b) language that stating "[w]henever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period[]", Plaintiffs in this case were served the subject breach notices by mail and are required to respond to those breach notices.

19.

Clearly, 8 C.F.R. § 103.8(b) applies to Plaintiffs and thus Plaintiffs have an additional 3 days to respond to Defendants' breach notices. Defendants do not deny that 3 days are added to Plaintiff's response period prescribed in 8 C.F.R. § 103.3(a)(2)(i) because they sent notices by mail.

20.

Clearly, 8 C.F.R. § 103.8(b) applies to Plaintiffs and thus the service of appeals submitted by mail are considered served upon mailing because the express language of 8 C.F.R. § 103.8(b) says **"[s]ervice by mail is complete upon mailing."** This language is an unambiguous regulatory application of the mailbox rule.

21.

Defendants are attempting to argue that *only the first sentence* of 8 C.F.R. § 103.8(b) ("Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served

by mail, 3 days shall be added to the prescribed period.") applies to Plaintiffs and that, somehow, the last sentence ("Service by mail is complete upon mailing"), is reserved for Defendants.

22.

Nowhere in 8 C.F.R. § 103.8(b), or anywhere else in 8 C.F.R. § 103.8, does the statute say that the language "service by mail is complete upon mailing" applies only to Defendants.

23.

To the extent that Defendants would attempt to cite language in their Board of Immigration Appeals Practice Manual, as if it is actually regulatory language, *it is not*, articulated by the manual itself, which reads: "**Disclaimer. – This manual does not carry the weight of law or regulation. This manual is not intended, nor should it be construed in any way, as legal advice, nor does it extend or limit the jurisdiction of the Board of established by law and regulation.**" <u>See</u> Chapter 1, 1.1(c).

24.

Despite the above disclaimer, Chapter 3.1(a)(i) of the Manual goes on to attempt to extend Defendants' jurisdiction and deny Plaintiffs' due relief by reading: "For appeals and motions that must be filed with the Board, the appeal or motion is not deemed "filed" until it is *received* at the Board. **The Board does not observe the "mailbox rule."** *This language directly contradicts the express*

*language of 8 C.F.R. § 103.8(b), which is undoubtedly the regulation that applies*

*to the mailing of Plaintiffs' appeals* because, *inter alia*, it is cited in the appeal

instructions relied upon by Defendants' own I-290B Form Instructions on

Appeals of Notices or Motions.

II. **Defendants are failing to adhere to the express language of regulations relevant to this case, altering as they see fit and prejudicing Plaintiffs**

25.

Defendants send out notices about bond breach decisions by mail; when

Plaintiffs have challenged those mailed decisions on grounds that the decision

was not received timely through the mail service, Defendants claim that the date

of service with respect to those decisions is the postmark date (not the date

received by Plaintiffs).

26.

When it comes time for Plaintiffs to prove that they submitted an appeal

within the allotted timeframe, however, Defendants reverse their stance and

claim that Plaintiffs are prohibited from proving timely submission of appeals by

pointing to the postmark date – this arbitrary reversal demonstrates an seismic

abuse of discretion regarding the interpretation of governing statutory language.

27.

On top of the express regulatory language relying on the mailbox rule in 8

C.F.R § 103.3(b), the express language used by 8 C.F.R. § 103.3(a)(2)(i) states that:

"the affected party must submit the complete appeal including any supporting brief as indicated in the applicable form instructions within 30 days after service of the decision" – with emphasis on the word <u>submit</u>.

28.

Emphasis is placed on the word <u>submit</u> found within 8 C.F.R. § 103.3(a)(2)(i) because filing the appeals in question is an administrative task completed by an agency representative of Defendants; Plaintiff does not have the ability to *file* the appeals, but rather to submit them *for filing by Defendants*.

29.

Defendants prohibit Plaintiffs from filing the appeals in question electronically, either through an ECF style system, direct email, or hand-delivery to Defendants.

30.

In this case, Plaintiffs have adhered to the language of the statutes, as described above, and submitted the appeals within 33 days.

### III.    Plaintiffs have previously provided Defendants with proof of timely submitted appeals

31.

Defendants' tactics are not new when it comes to some of these Plaintiffs. Tracking numbers provided to Defendants for Plaintiffs' appeals connected to a different surety (other than FCS) indicate that those appeals' dates of arrival to

the post office in the months of January, February, March, and April 2019 were within 33 days after Defendants served correlated bond breach notices upon Plaintiffs. Plaintiff took all measures possible to ensure they would be received by the USCIS in a timely manner.

32.

Additionally, to defend against Defendants' claims that Plaintiffs' AIA appeals were untimely submitted, Plaintiffs provided Defendants with Form I-797(c)'s, Notice of Action, for the subject bond breach appeals, communicating USCIS' receipt of Forms I-290B submitted.

33.

The tracking numbers provided to Defendants for those other Statewide appeals indicated the amount of time that the appeals were held without cause by the USPS, and without fault of Plaintiff.

34.

Without USPS' delay, Plaintiffs' appeals that were mailed by the 33rd day would have been successfully and timely delivered to the USCIS and filed as so.

35.

USPS' delay is beyond Plaintiffs' control.

36.

As shown in Defendant's letter to Plaintiffs dated July 1, 2019, indisputably, the USPS caused 8 out of 10 of the submitted appeals to be delivered one to three days after the prescribed deadline; the other two submitted appeals were received seven and eight days, respectively, after the prescribed deadline. These delays are reasonable and out of Plaintiff's control.

## IV.    Defendants use weird language in trying to escape the reality that 8 C.F.R. § 103.8(b) applies to Plaintiffs

37.

In a bizarre twist, Defendants sent a letter stating that the mailbox rule is a common-law rule usually reserved for contract formations: "[t]he common-law "mailbox rule" typically applies when the issue of timely acceptance of an offer is raised in contract formation disputes. Here, when an administrative agency has promulgated regulations stating that an appeal must be submitted within 33 days when the decision being appealed was issued by regular mail, the "mailbox rule" has no effect."

38.

The entire legal community in the United States of America has a firm grasp on the fact that the mailbox rule is used by governments and courts in a variety of manners that have absolutely nothing to do with 'contract formation disputes.'

39.

In another demonstration of Defendants trying to hone their skills in the art of deception, Defendants state that "[b]ecause the agency has no way of determining when someone placed an AAO appeal in the mail, it can calculate timeliness of filing using the date the agency received the appeal notice – a date that the agency can ascertain for itself." This contention is easily debunked by the known fact that the USPS permits people to track documents with tracking numbers, and also postmarks all mail. And, as established, Plaintiffs provided Defendants with the tracking numbers indicating the date the appeals were delivered to the USPS and showing timeliness.

40.

In two separate letters to Plaintiffs' counsel dated July 1, 2019 and July 8, 2019, U.S. Immigration and Customs Enforcement (ICE) attempts to wiggle out of granting Plaintiffs' clients' due process rights by stating that they "lack the discretion" to treat untimely appeals as timely-filed because ICE follows DHS regulations and USCIS instructions (<u>See</u> Exhibits 2 and 4). Plaintiff is not asking for discretion, but for DHS to adhere to the applicable, express language of its own regulatory framework.

**V.      Defendants reject Plaintiffs' 8 appeals that were filed *after* the applicable deadline, despite the evidence demonstrating that Defendants have contemporaneously accepted and granted appeals that were filed after the deadline—appeals made with the same legal and factual arguments**

41.

In direct contrast to Defendants' stated position that they lack the discretion to treat untimely appeals as timely-filed, Defendants have actually accepted and ***granted*** appeals that were mailed after the 33-day deadline— appeals made on the same factual basis and legal grounds (the Supreme Court's <u>Pereira</u> decision), resulting in the reinstatement of those bonds. For example, one FCS bond (not one of the 21 bonds at issue in this case) had a breach notice date of December 20, 2018, and an appeal was mailed on January 29, 2019 (40 days after the notice of appeal and 7 days after the 33-day deadline). That appeal was received on February 5, 2019. On May 13, 2019, the bond breach determination was reconsidered on the merits of the appeal and the bond was reinstated. This is but one example demonstrating that Defendants are operating in a truly arbitrary manner with no legitimate rhyme or reason.

42.

Because of Defendants' glaring inconsistencies and arbitrary application of their regulations, payment is now demanded for 8 bond breach appeals that were filed by Plaintiffs after the 33-day deadline: totaling over

$78,000.00.

## CAUSES OF ACTION

### COUNT I
### Caim for violation of Procedural and Substantive Due Process Clause protected by the
### 5th Amendment of the U.S. Constitution

43.

Plaintiffs hereby incorporate paragraphs 1 through 42, and any other paragraphs this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

44.

Based on all the facts of support this Count, Defendants violated Plaintiffs' procedural and substantive due process rights. Defendants' violation of Plaintiffs' due process rights is causing irreparable harm to Plaintiffs, Plaintiffs' reputation, and Plaintiffs' program participants.

### COUNT II
### Claim for violation of the Administrative Procedures Act ("APA"), 5 U.S.C § 706(2)(C)

45.

Plaintiffs hereby incorporate paragraphs 1 through 42, and any other paragraphs this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

46.

Based on all the incorporated facts, Defendants' action of declaring timely

submitted appeals as untimely filed is unlawful, unconstitutional, in excess and outside of authority, and an abuse of authority, *inter alia*, under the APA.

## COUNT III
### Claim for Declaratory Relief
### for violation of the Administrative Procedures Act, 5 U.S.C § 706(2)(C) and for violation of Procedural and Substantive Due Process Rights protected by the Due Process Clause 5th Amendment of the U.S. Constitution

47.

Plaintiffs hereby incorporate paragraphs 1 through 42, and any other paragraphs this Court deems relevant, as repeated and realleged as though fully set forth herein to support this Count.

48.

Based on all the incorporated facts, Defendants' action of labeling timely submitted bonds as untimely filed is unlawful, unconstitutional, in excess of authority and an abuse of authority, under the APA.

49.

Based on all the incorporated facts, Defendants' actions in attempting to label timely submitted appeals as untimely filed deprives Plaintiffs of their due process rights under the 5th Amendment to the United States Constitution.

50.

Based on all the incorporated facts, Plaintiffs are entitled to declaratory judgement declaring the Defendants' actions are arbitrary and capricious, in violation of the APA, and an unconstitutional deprivation of Plaintiffs'

procedural and substantive protections under the due process clause of the

United States Constitution.

## COUNT IV
### Claim for Injunctive Relief
**for violation of the Administrative Procedures Act, 5 U.S.C § 706(2)(C) and for violation of Procedural and Substantive Due Process Rights protected by the Due Process Clause 5th Amendment of the U.S. Constitution**

51.

Plaintiffs hereby incorporate paragraphs 1 through 42, and any other

paragraph this Court deems relevant, as repeated and realleged as though fully

set forth herein to support this Count.

52.

Based on all the facts to support this Count, Plaintiffs seek injunctive relief

to enjoin Defendants from violating their due process rights as set forth in the

factual paragraphs of this Complaint. Defendants' violation of Plaintiffs' due

process rights is causing irreparable harm to Plaintiffs, Plaintiffs' reputation, and

Plaintiffs' program participants. Based on the incorporated facts to support this

Count, Plaintiffs meet all legal criteria which would permit this Court to grant

the requested relief of, inter alia, enjoining Defendants from labeling timely

submitted appeals as untimely filed. Plaintiffs, based on the incorporated facts to

support this Count, have a high likelihood of success on the merits, and the

injunctive relief sought serves the public interest. The balance of equities also

weighs in Plaintiffs' favor, and as far as irreparable harm, Plaintiff and Plaintiff's

program participants have suffered significantly.

**COUNT VI**
**Attorney's Fees**

Based on the foregoing, Plaintiffs are entitled to reasonable attorney's fees under all applicable laws, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

**PRAYER FOR RELIEF**

Plaintiffs request that the Court enter a judgment against Defendants and award the following relief:

A.    Order Defendants be enjoined from declaring timely submitted appeals as untimely filed, until the substantive legal issues in this Complaint are resolved;

B.    Enter judgment and declaratory judgment in favor of Plaintiffs;

C.    Enter injunctive relief in Plaintiffs' favor as prayed for in Plaintiffs' Complaint or as this Court deems fit;

D.    Award costs and attorneys' fees to Plaintiffs; and

E.    Order all other relief that is just and proper.

Respectfully submitted this 13th day of September 2019,

/s/ John M. Shoreman
John M. Shoreman (#407626)

**MCFADDEN & SHOREMAN, LLC**
1050 Connecticut Avenue, NW
Washington, DC 20036

202-772-3188/202-204-8610 FAX
jmshoreman@verizon.net
*Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have served a true and correct copy of the foregoing

COMPLAINT with the Clerk of Court via CM/ECF which automatically serve

email notification to all counsel of record.

Respectfully submitted this 13th day of September 2019,

/s/John M. Shoreman
John M. Shoreman (#407626)

**MCFADDEN & SHOREMAN, LLC**
1050 Connecticut Avenue, NW
Washington, DC 20036
202-772-3188/202-204-8610 FAX
jmshoreman@verizon.net
*Counsel for Plaintiffs*